# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARCO RAMOS**<br>Individually and on Behalf of All<br>Others Similarly Situated<br>23013 Delca Lane<br>Wildomar, CA 92595<br><br>Plaintiffs,<br><br>v.<br><br>**NAVMAR APPLIED SCIENCES<br>CORPORATION**<br>65 W. Street Road, Building C<br>Warminster, PA 18974<br><br>Defendant. | Civil Action No.: |

## COLLECTIVE ACTION COMPLAINT FOR
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT

Plaintiff Marco Ramos, individually and on behalf of all others similarly situated, by and through counsel, files this Collective Action Complaint against Defendant Navmar Applied Sciences Corporation. All allegations made in this Collective Action Complaint are based on information and belief, except those allegations that pertain to the named Plaintiff (hereafter "Ramos"), which are based on personal knowledge. Ramos' information and beliefs are based, *inter alia*, on the investigation made by and through counsel.

### NATURE OF THE CASE

1.   Ramos, individually and on behalf of all others similarly situated, brings this action for declaratory, monetary, and other appropriate relief to redress Navmar's intentional violations of their rights under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2. Ramos and all other similarly situated employees were not paid full wages for all hours worked or overtime compensation at a rate not less than one and one-half (1.5) times the regular rate at which they were employed for work performed beyond the forty (40) hours per workweek, as required by the FLSA for at least three (3) years prior to the filing of this action (referred to herein as the "Look-Back Period").

3. Upon information and belief, Navmar is a corporation organized under the laws of the Commonwealth of Pennsylvania. It is a defense contractor and maintains its headquarters/ principal executive offices at 65 W. Street Road, Building C, Warminster, Bucks County, PA 18974. In addition to Pennsylvania, it has operations in Arizona, Texas, Florida, Washington, Georgia, North Carolina, Virginia, New Jersey, Maryland, California and Indiana.

4. Navmar focuses on military avionics systems, unmanned aerial vehicles ("UAV"), unmanned aerial systems ("UAS"), surveillance and video/imagery solutions. UAV are more commonly known as "drones."

5. More specifically, Navmar provides engineering and technical services in support of the Department of Defense. One of those services is providing and staffing Persistent Ground Surveillance Towers (PGST), a tower which houses cameras and radar that surveil for unauthorized aircraft approaching restricted airspaces.

6. For the program described in the preceding paragraph, Navmar employs a category of employee called Operator. The Operators work with the surveillance towers (these Operators will be referred to herein as the "PGST Operators").

7. Navmar's policy and practice is to deny earned wages and overtime pay to its PGST Operators. Its' failure to pay employees their earned wages and overtime compensation has been deliberate and violates the FLSA.

2

8. Ramos and all others similarly situated are current and former employees of Navmar who have worked as PGST Operators and performed work as such within the United States at any time during the Look-Back Period, and who were/are not paid full wages for all hours worked or overtime compensation at a rate not less than one and one-half (1.5) times the regular rate at which they were/are employed for work performed beyond the forty (40) hours per workweek, as required by the FLSA.

9. This lawsuit is brought as a collective action under the FLSA to recover unpaid wages and overtime compensation owed to Ramos and all other similarly situated employees who are/were PGST Operators at Navmar.

## JURISDICTION AND VENUE

10. The FLSA authorizes claims by private parties to recover damages for violations of the FLSA's wage and hour provisions. Jurisdiction over this FLSA collective action is based upon 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

11. Navmar is subject to personal jurisdiction in this District as it maintains its principal place of business/headquarters in this District, regularly does business throughout the Commonwealth of Pennsylvania, and employed/employs Ramos and all other similarly situated employees through its headquarters in Pennsylvania.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), as Navmar resides in this District and because a substantial part of the events giving rise to the claims herein occurred in this District.

## PARTIES

13. Ramos currently resides in Wildomar, California. Though he performed services as a PGST Operator in Washington and Georgia, he was hired by Navmar out of its Warminster,

Pennsylvania headquarters and, at all times relevant hereto, was employed and directed (in part) out of the Warminster, Pennsylvania headquarters.

14. Ramos was employed by Navmar as a PGST Operator from in or about February 2016 through April 2016 and then in or about July 2016 through April 10, 2017 when he resigned.

15. Ramos was an "employee" of Navmar as that term is defined by Section 203 of the FLSA.

16. Upon information and belief, Navmar employed/employs and directed/directs the PGST Operators out of its headquarters in Pennsylvania.

17. The PGST Operators perform services on behalf of Navmar for its customers.

18. Navmar was the "employer" of Ramos and was/is the "employer" of all other similarly situated former and current employees as that term is defined by Section 203 of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

19. Pursuant to 29 U.S.C. § 207, Ramos seeks to prosecute the FLSA claims as a collective action on behalf of himself and all similarly situated persons who are and/or were formerly employed by Navmar during the Look-Back Period. As explained below, these current and former Navmar employees did not receive any wages for certain hours which they have worked as PGST Operators at Navmar, and they did not receive required overtime compensation at a rate not less than one and one-half (1.5) times the regular rate at which they were/are employed for work performed during the Look-Back Period.

20. The precise number of such persons is unknown, and the facts on which the calculation of that number is based are presently within the sole control of Navmar. Upon

information and belief, however, there may be fifteen (15) potential members of the collective action who were or are employed by Navmar at any point during the Look-Back Period, most of whom would not be likely to file individual lawsuits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.

21. Ramos will fairly and adequately protect the interests of the putative class and has retained counsel who is experienced and competent in the fields of employment law and collective action litigation such as this.

22. A collective action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where the individual plaintiffs likely lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

23. Furthermore, because the damages suffered by each similarly situated person are relatively small compared to the substantial expense and burden of litigation, it would be virtually impossible for any former or current employee of Navmar affected by Navmar's unlawful pay practices to pursue relief under the FLSA other than as part of a collective action.

24. There are questions of law and fact common to the members of the collective action which predominate over questions that may affect only individual members because Navmar has acted on grounds and applied policies applicable to all members. Among the questions of law and fact common to Ramos and all other similarly situated employees are, *inter alia*:

    a. whether Navmar misclassified the exemption status of Ramos and all other similarly situated employees;

b. whether Navmar has a policy of misclassifying workers as exempt from coverage of the overtime provisions of the FLSA;

c. whether Navmar failed to pay Ramos and all other similarly situated employees wages for all hours worked as well as proper overtime compensation for all hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

d. whether Navmar failed to include work travel time in the computation of hours worked for Ramos and all other similarly situated employees;

e. whether Navmar failed to pay Ramos and all other similarly situated employees wages and proper overtime compensation for compensable travel time;

f. whether Navmar disallowed or prohibited time entries to be made by Ramos and all other similarly situated employees;

g. whether Navmar improperly paid/pays Ramos and all other similarly situated employees based on time periods other than their workweeks;

h. whether Navmar failed to keep accurate and complete time records for all hours worked by Ramos and all other similarly situated employees;

i. whether Navmar violated the overtime compensation requirements of the FLSA by acquiescing to the instructions of its customer(s);

j. whether Navmar violated the rights of Ramos and all other similarly situated employees provided by the Service Contract Act;

k. whether Navmar violated the rights of Ramos and all other similarly situated employees provided by the Contract Work Hours and Safety Standards Act;

l.  whether Navmar's violations of the FLSA have been willful or with reckless disregard of the statute;

m.  whether Navmar is liable for all damages claimed herein including, but not limited to, compensatory, liquidated, interest, costs, and attorney's fees; and

n.  whether Navmar should be enjoined from violations of the FLSA in the future.

25. Ramos knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a collective action.

26. If individual actions were required to be brought by each member of the putative class injured or affected, the result would be a multiplicity of actions, creating a hardship to Ramos, the putative class members, Navmar, and the Court.

27. The members of the FLSA putative class have been damaged and are entitled to recovery as a result of Navmar's common and uniform policies, practices, and procedures.

## STATEMENT OF FACTS

28. Upon information and belief, during the Look-Back Period, Navmar has improperly classified Ramos and other similarly situated employees as "exempt" from the requirements of the FLSA, thereby denying these employees proper wages and overtime compensation for hours worked in excess of forty per workweek, as required by the FLSA.

29. In the alternative, if during the Look-Back Period, Navmar has classified Ramos and other similarly situated employees as "non-exempt" from the requirements of the FLSA, it has willfully failed to pay these employees proper wages and overtime compensation for hours worked in excess of forty per workweek, as required by the FLSA.

30. Upon information and belief, PGST Operators are deemed to be employed by Navmar out of Pennsylvania and their primary work activities for the company are assigned by Navmar from its corporate headquarters in Pennsylvania. Once the PGST Operators are assigned to their work locations, Navmar has very little, if any, involvement with the assignment and direction of their daily job duties and responsibilities.

31. Though the PGST Operators are hired by Navmar out of its Pennsylvania headquarters, they may perform services on behalf of Navmar in other states at the direction of Navmar.

32. In typical workweeks, with the knowledge, permission, and mandate of their superiors and management at Navmar, Ramos and all other similarly situated employees work/worked forty hours, work/worked extra hours during such forty-hour weeks, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

33. Within the Look-Back Period, Ramos and all other similarly situated employees typically work/worked forty hours each workweek, work/worked extra hours during such forty-hour week, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

34. For each workweek, Ramos and all other similarly situated employees record/recorded their hours worked in Navmar's computer timekeeping system.

35. Navmar's computer timekeeping system will show the many workweeks during which Ramos and all other similarly situated employees work/worked forty hours, work/worked extra hours during such forty-hour weeks, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

36. Navmar's payroll records will show that Ramos and all other similarly situated employees were not properly paid for the extra hours in excess of forty per workweek for the many workweeks during which they work/worked more than forty hours.

37. Navmar maintains nationwide policies and patterns or practices that violate the rights of Ramos and all other similarly situated employees under the FLSA.

38. As part of its regular business practice, Navmar has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, but may not be limited to:

   a. willfully misclassifying Ramos and all other similarly situated employees as exempt from the requirements of the FLSA;

   b. willfully failing to include in the computation of hours worked the time spent by Ramos and all other similarly situated employees traveling for work;

   c. in workweeks during which more than forty hours were/are worked, not paying Ramos and all other similarly situated employees at a rate not less than one and one-half (1.5) times the regular rate at which they were/are employed for the work performed beyond the forty hours per workweek as required by the FLSA;

   d. improperly compensating Ramos and all other similarly situated employees for extra hours beyond forty hours they work/worked during workweeks in which they work/worked more than forty hours;

   e. telling Ramos and all other similarly situated employees that they would only be paid for forty hours per workweek even though more than forty hours per workweek were/are worked;

f.  willfully failing to tell Ramos and all other similarly situated employees to record their hours worked as required by the FLSA;

g.  willfully failing to maintain any form of time-recording or time-keeping system as required by the FLSA;

h.  willfully failing to keep payroll records as required by the FLSA;

i.  willfully failing to pay Ramos and all other similarly situated employees based on hours worked in each workweek as that term is defined by the FLSA;

j.  willfully violating the overtime compensation requirements of the FLSA by acquiescing to the instructions of its customer(s); and

k.  failing to maintain the proper, accurate, and complete documentation and records including Ramos' and all other similarly situated employees' work travel time and full amount of hours worked on a daily and weekly basis as required by the FLSA.

39. Upon information and belief, Navmar's unlawful conduct detailed in this Collective Action Complaint is pursuant to a corporate policy or practice of minimizing labor costs by violating the FLSA.

40. Ramos and all other similarly situated employees suffered injury and were negatively affected in a similar fashion as a result of the above-described policies and practices of Navmar.

41. Upon information and belief, Navmar has committed the above-described federal wage and hour law violations as a result of its own improper classification of Ramos and all other similarly situated employees as "exempt," when they should have been classified as non-exempt under the FLSA.

42. Ramos and all other similarly situated employees do not fit into any exemption under the FLSA and, therefore, any classification of these employees as exempt from overtime compensation is improper and violates the FLSA.

43. The PGST Operators' primary job duty is to operate the cameras and radar on the tower and scan for unauthorized aircraft. In so doing, the majority of PGST Operators' work time involves extraordinarily long work hours and the performance of routine, manual tasks to provide support for the program. More specifically, the PGST Operators:

    a. sit in a ground control station where they use hand controllers to operate the cameras and radar on the tower;

    b. perform scheduled and other as-needed maintenance on the towers and generators;

    c. level the tower platform;

    d. clean the camera lenses;

    e. update other PGST Operators on the status of operations; and

    f. prepare daily visitor logs and maintenance logs.

44. The PGST Operators and their daily job duties and assignments are directed by the government customer.

45. PGST Operators do not manage the enterprise.

46. PGST Operators do not customarily or regularly supervise or direct the work of other full-time employees of Navmar, nor do they have any authority to hire or fire other employees.

47. PGST Operators do not perform office or non-manual work directly related to the management or general business operations of Navmar.

48. PGST Operators' primary duty does not include the performance of work requiring advanced knowledge (defined as work which is predominantly intellectual in character and which includes work requiring the consistent exercise of discretion and judgment). Knowledge possessed by the PGST Operators and utilized for their work is not in a field of science or learning, nor is it acquired by a prolonged course of specialized intellectual instruction.

49. PGST Operators do not perform work typically associated with computer systems analysts, computer programmers, software engineers or other similarly skilled workers in the computer field. Further, PGST Operators' primary duty does not include the design, development, and/or creation of computer systems or programs. Only a minimal percentage of the PGST Operators' work time involves working on a computer.

50. Navmar has intentionally and repeatedly misrepresented the true nature of compensation to Ramos and all other similarly situated employees, thereby failing to disclose and consciously concealing their true non-exempt status under the FLSA and their entitlement to receive full wages and overtime compensation for their work. Upon information and belief, those actions were deliberately taken to avoid any questions by Ramos and all other similarly situated employees regarding their entitlement to fair and full compensation for their work. Ramos and all other similarly situated employees relied upon Navmar's misrepresentations. As a direct and proximate result, Ramos and all other similarly situated employees were unable to determine their true status under the FLSA by the exercise of reasonable diligence.

51. There are numerous other similarly situated employees and former employees of Navmar who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of Court-supervised notice of the present action and the opportunity to

join the present action. Those similarly situated employees are known to Navmar and are readily identifiable and locatable through its records. All employees and former employees who have been employed by Navmar as PGST Operators and who were not performing duties that qualified them to be exempt from the FLSA's requirement of overtime pay for work in excess of forty hours per workweek would benefit from Court-supervised notice and an opportunity to join the present action and should be so notified.

52. Navmar has engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay Ramos and all other similarly situated employees in accordance with those laws.

53. As a direct and proximate result of Navmar's violations of the FLSA, Ramos and all other similarly situated employees have suffered damages by failing to receive compensation to which they were entitled pursuant to those laws.

## COUNT ONE
## FAIR LABOR STANDARDS ACT – COLLECTIVE ACTION

54. Ramos repeats and realleges each and every allegation of the preceding paragraphs as though fully set forth herein.

55. Navmar engaged and continues to engage in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Collective Action Complaint.

56. At all times relevant hereto, Navmar is and has been an "employer" of Ramos and all other similarly situated employees within the meaning of § 203(d) of the FLSA.

57. At all times relevant hereto, Navmar is and has been an employer/enterprise engaged in interstate commerce and/or the production of goods for commerce within the meaning of §§ 206(a) and 207(a) of the FLSA.

58. At all times relevant hereto, Navmar employed and/or continues to employ Ramos and all other similarly situated employees within the meaning of the FLSA.

59. At all relevant times hereto, upon information and belief, Navmar has had gross revenues in excess of $500,000.00.

60. Ramos consents in writing to be a party plaintiff to this action pursuant to Section 216(b) of the FLSA. Ramos' written Consent Form is attached hereto and incorporated by reference.

61. Because Navmar willfully violated the FLSA by misclassifying Ramos and all other similarly situated employees, a three-year (3) statute of limitations applies to such violations pursuant to Section 255 of the FLSA.

62. Navmar has willfully and intentionally engaged and continues to engage in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by misclassifying PGST Operators as "exempt" employees, thereby failing and refusing to pay the proper hourly wage computation of current and former PGST Operators, including Ramos and all other similarly situated employees, in accordance with § 206 and § 207 of the FLSA.

63. In typical workweeks, with the knowledge, permission, and mandate of their superiors and management at Navmar, Ramos and all other similarly situated employees work/worked forty hours, work/worked extra hours during such forty-hour weeks, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

64. Within the Look-Back Period, Ramos and all other similarly situated employees typically work/worked more than forty hours each workweek, work/worked extra hours during

such forty-hour week, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

65. For each workweek, Ramos and all other similarly situated employees record/recorded their hours worked in Navmar's computer timekeeping system.

66. Navmar's computer timekeeping system will show the many workweeks during which Ramos and all other similarly situated employees work/worked forty hours, work/worked extra hours during such forty-hour weeks, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

67. Navmar's payroll records will show that Ramos and all other similarly situated employees were not properly paid for the extra hours in excess of forty per workweek for the many workweeks during which they work/worked more than forty hours.

68. At all times relevant hereto, Navmar had and has a policy and practice of refusing to pay wages for all hours worked as well as overtime compensation to Ramos and all other similarly situated employees for their hours worked in excess of forty hours per workweek.

69. More specifically, in typical workweeks Ramos and all other similarly situated employees work/worked forty hours, work/worked extra hours during such forty-hour weeks, and are/were not properly compensated for extra hours beyond forty hours they work/worked during those forty-hour weeks.

70. At all times relevant hereto, Navmar had and has a policy and practice of requiring Ramos and all other similarly situated employees to perform non-exempt duties without proper compensation and overtime compensation.

71. As a result of Navmar's willful failure to compensate its employees, including Ramos and all other similarly situated employees, at a rate not less than one and one-half (1.5)

times the regular rate of pay for work performed in excess of forty hours in a workweek, Navmar has willfully violated, and continues to willfully violate the FLSA.

72. As a result of Navmar's failure to record/report the full amount of time, Ramos and all other similarly situated employees worked/work and to compensate them for such time, Navmar has failed to make, keep, and preserve accurate records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA.

73. As a result of Navmar's FLSA violations as detailed above, Ramos and all other similarly situated employees have suffered damages by being denied full wages and/or overtime compensation in accordance with the FLSA.

74. Navmar has not made a good faith effort to comply with the FLSA with respect to its compensation of Ramos and all other similarly situated employees.

75. As a direct and proximate result of Navmar's unlawful acts, Ramos and all other similarly situated employees have been deprived of wages and overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, interest, costs, attorney's fees, and other compensation pursuant to the FLSA.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Marco Ramos, individually and on behalf of all other similarly situated employees, prays for the following relief:

(A) certification of this action as a collective action brought pursuant to Section 216(b) of the FLSA;

(B) a determination that the practices, policies, and patterns complained of herein are unlawful under the FLSA;

(C) an injunction against Navmar from engaging in each of the unlawful practices, policies, and patterns complained of herein, including enjoining Navmar from classifying Ramos and all other similarly situated employees as exempt under the FLSA;

(D) a designation of Ramos as a Class Representative;

(E) at the earliest possible time, an Order that Navmar be required to give notice, or that the Court issue such notice, to all Navmar employees in all locations within the United States and Puerto Rico during the three (3) years immediately preceding the filing of this action, who are or may be similarly situated to Ramos, informing them that this action has been filed, describing the nature of the allegations, and advising them of their right to opt-into this action if they worked at Navmar but were not paid proper wages and/or full overtime pay and benefits pursuant to Section 216(b) of the FLSA;

(F) an award of damages, in an amount to be determined at trial, including unpaid back-end and front-end wages as well as liquidated damages pursuant to the FLSA and regulations of the U.S. Department of Labor promulgated pursuant to the FLSA;

(G) penalties available under applicable law;

(H) pre- and post-judgment interest, as provided by law;

(I) reasonable attorney's fees and costs of suit, including expert fees; and

(J) such other legal and equitable relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Marco Ramos, individually and on behalf of all other similarly situated employees, demands a trial by jury on all claims and issues triable as a matter of right by a jury.

Dated: April 18, 2017　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　/s/ Peter R. Rosenzweig
　　　　　　　　　　　　　　　　　　　　　Peter R. Rosenzweig, Esq.
　　　　　　　　　　　　　　　　　　　　　PA Bar No.: 81759
　　　　　　　　　　　　　　　　　　　　　Kleinbard LLC
　　　　　　　　　　　　　　　　　　　　　One Liberty Place, 46th Floor
　　　　　　　　　　　　　　　　　　　　　1650 Market Street
　　　　　　　　　　　　　　　　　　　　　Philadelphia, PA 19103
　　　　　　　　　　　　　　　　　　　　　Tel: (267) 443-4120
　　　　　　　　　　　　　　　　　　　　　Facsimile: (215) 568-0140
　　　　　　　　　　　　　　　　　　　　　prosenzweig@kleinbard.com

　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff Marco Ramos,*
　　　　　　　　　　　　　　　　　　　　　*Individually and on Behalf of All Others*
　　　　　　　　　　　　　　　　　　　　　*Similarly Situated*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Navmar Applied Sciences Corporation and/or its owners, officers, subsidiaries, contractors, managers, shareholders and/or affiliates to pay me minimum wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.

Date: 4-17-2017

MARCO ANTONIO RAMOS
Printed Name

Signature